IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| JOSEFINA VAZQUEZ, | |
|---|---|
| Plaintiff, | 8:18-CV-519 |
| vs. | |
| ANDREW M. SAUL, Commissioner of the Social Security Administration; | MEMORANDUM AND ORDER |
| Defendant. | |

Josefina Vazquez ("Petitioner") filed her Complaint (Filing 1-2) seeking judicial review of the Commissioner's denial of her application for disability insurance benefits and partial denial of her application for supplemental security income disability benefits and moved this Court for an order reversing the Commissioner's final decision. Filing 15. The Commissioner filed a motion to affirm the agency's final decision denying benefits. Filing 17. For the reasons stated below, the Court grants the Commissioner's motion and denies Petitioner's motion.

I. BACKGROUND[1]

This case involves petitioner Josefina Vazquez's applications for disability insurance benefits and supplemental social security income. The case has been remanded twice and is now before the Court on a second petition for judicial review relating to the denial of benefits, as will be discussed in greater detail below. As is relevant for purposes of this case, Petitioner was born

---

[1] This Court's General Order No. 2015-05 (Filing 3) instructs that a plaintiff challenging a final decision of the Commissioner of the Social Security Administration shall include in his or her brief supporting a motion to reverse the decision "a statement of material facts," which is "supported by page references to the administrative record." The Commissioner must then file a motion to affirm its decision and include with its supporting brief "a non-repetitive counter-statement," if the Commissioner disagrees with any portion of the plaintiff's statement. Here, Petitioner submitted a scant statement of facts, and the Commissioner concurred. *See* Filing 16 at 5; Filing 18 at 2. This section contains a synthesis of these facts, other facts cited by the parties as discussed below, and additional material facts from the record.

1

on March 25, 1963; was forty-four years of age on her amended onset date of November 30, 2007; was fifty years old at the time of the first administrative decision denying her benefits; and was fifty-four years old by the time of the administrative decision currently at issue. Tr. 169, 204, 660, 735. She was 4 feet, 8 inches tall and weighed 138 pounds at the time of her application. Tr. 221. She did not speak English well, had a sixth-grade education, and was illiterate. Tr. 220-21, 687.

### A. Procedural History

In August of 2011, Petitioner applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. ("Title II") and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. ("Title XVI"). Tr. 169. Petitioner alleged a disability onset date of May 1, 2005. Tr. 22. Both claims were denied initially and on reconsideration. Tr. 89, 108. A hearing was held before the administrative law judge ("ALJ") during which Petitioner amended her alleged onset date to November 30, 2007. Tr. 47-48. On May 14, 2013, the ALJ issued a decision denying Petitioner's requests, finding she was not disabled as defined by 42 U.S.C. §§ 216(i) and 223(d) between November 30, 2007, and the date of the ALJ's decision. Tr. 22, 34. The Social Security Appeals Council ("Appeals Council") then denied her request for review of the ALJ's decision. Tr. 14.

Petitioner then filed a complaint seeking judicial review in the United States District Court for the Northern District of Iowa ("the Iowa Court"). *See* Tr. 759-761. The Commissioner moved to remand, and the Iowa Court granted the Commissioner's motion. *See* Tr. 759-761. On remand, the Appeals Council gathered more evidence, albeit evidence lacking significant probative value, and again denied Petitioner's requests for disability benefits. *See* Tr. 762-765. Petitioner then moved to reopen her prior case before the Iowa Court and argued the ALJ erred by evaluating expert opinions contrary to the evidence and correct standards. Tr. 817. Ruling on Petitioner's

motion and arguments, the Honorable C.J. Williams, Magistrate Judge for the Iowa Court, recommended reversing and remanding the case for further proceedings. Tr. 821-822.

In her recommendation, Judge Williams noted the ALJ both incorrectly gave the opinion of Petitioner's psychiatrist, Rodney Dean, M.D. ("Dr. Dean"), only "some weight" and asserted that Dr. Dean's opinions were not supported by his treatment notes. Tr. 818. Finding the record generally supported Dr. Dean's opinion, Judge Williams recommended reversal and remand because Dr. Dean's opinion was entitled to controlling weight. Tr. 821. She also recommended the ALJ consider additional treatment records of Dr. Dean. Tr. 821. Judge Williams wrote:

> For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the Court reverse the Commissioner's determination that claimant was not disabled and remand the case for further proceedings in which the expert treating medical opinion of Dr. Dean is given controlling weight, and that judgment be entered against the Commissioner and in favor of claimant.

Tr. 821 (emphasis in original).

The Honorable Leonard T. Strand, District Judge for the Iowa Court, accepted Judge Williams's recommendation without modification. Tr. 809. Judge Strand issued an order ("the Order") reversing and remanding the case for further proceedings "as discussed by Judge Williams." Tr. 809.

On remand from the Iowa Court for a second time, the Appeals Council remanded the case for further proceedings.[2] Tr. 823, 825. After a hearing on the consolidated claims, to be discussed further below, ALJ Jan Dutton determined that Petitioner was not disabled prior to March 24, 2013 but became disabled on that date upon reaching the age of fifty and therefore changing age category. Tr. 671, 681-83, 686-87. The ALJ's June 1, 2017 decision foreclosed Petitioner's ability

---

[2] Following the ALJ's initial decision in May 2013, Petitioner filed a new claim for Supplemental Security Income. Tr. 825. While the case was on remand for the second time, the Appeals Council consolidated the case with the subsequently filed claim because there were common or duplicate issues present in both claims. Tr. 825; *see also* 20 C.F.R. §§ 404.952, 416.1452. Thus, the case before this Court involves Petitioner's consolidated claims regarding the entire time period from November 30, 2007 through the date of the ALJ's most recent decision.

3

to obtain Title II disability insurance benefits but granted her request for supplemental security income disability benefits. The ALJ's decision was upheld by the Appeals Council on September 14, 2018, and Petitioner timely filed the present action. Tr. 653; [Filing 4](#).

### B. Administrative Hearing

On February 28, 2017, the ALJ held an administrative hearing on Petitioner's consolidated claims. Tr. 700. At the beginning of the hearing, the ALJ noted new evidence was now part of the file that was received into evidence. Tr. 700-03. Petitioner then testified.

According to Petitioner, she cannot read or write in English. Tr. 710. She used to serve food at a school and then worked as a dietary aide. Tr. 710-12. Before leaving her job in 2015 as a dietary aide due to "personal problems, at home," Petitioner drove twenty minutes to work. Tr. 713. She suffers from depression; jogs five times a week for ten to fifteen minutes; and tries to do cooking, cleaning, and other housework. Tr. 714-15. On a scale of zero to ten with ten being suicidal, Petitioner is at a ten and has thoughts of suicide. Tr. 719-20. She also experiences headaches due to a car crash and suffers from left leg pain. Tr. 722-24.

Ms. Deborah Determan, a vocational expert, testified that Petitioner's past relevant work included medium unskilled work as a dietary aid (DOT 319.677-014) and light unskilled work as a cafeteria service attendant (DOT 311.677-010). Tr. 727-28. She noted that an individual capable of medium work with no restrictions on standing, sitting, or walking and occasional social interaction could work as a dishwasher (DOT 318.687-101), a production line welder (DOT 819.684-101), or a hand packer (DOT 920.587-018). Tr. 729. For these occupations, she stated that incidents of work in the United States were 160,000, 12,000, and 11,000 respectively. Tr. 729. Determan opined that an individual capable of light work who could stand, sit, or walk six hours in an eight-hour day and could socially interact occasionally could work as a palletizer (DOT

929.687-014), sealing and canceling machine operator (DOT 208.685-026), or housekeeper (DOT 323.687-014). Tr. 730. For these occupations, incidents of work in the United States were 11,000, 7,000, and 100,000 respectively. Tr. 729.

Finally, Determan testified that a person totally incapable of understanding or carrying out short and simple instructions would be precluded from competitive employment and missing two or more days of work each month would preclude competitive employment. Tr. 732-33.

### C. The ALJ's Findings

An ALJ is required to follow a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004))). The ALJ must continue the analysis until the claimant is found to be "not disabled" at steps one, two, four or five, or is found to be "disabled" at step three or step five. *See* 20 C.F.R. § 404.1520(a).

Step one requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (b). The ALJ determined Petitioner was not and had not engaged in substantial gainful activity since her alleged onset date of November 30, 2007. Tr. 673-74.

Step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). A "severe impairment" is an impairment or combination of impairments

that significantly limits the claimant's ability to perform "basic work activities," 20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), and satisfies the "duration requirement." 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522. If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). The ALJ determined Petitioner had the following severe impairments: depressive disorder, anxiety disorder, and obesity. Tr. 674.

Step three requires the ALJ to compare the claimant's impairment or impairments to a list of impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *see also* 20 C.F.R. § 404, Subpart P, App'x 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be "disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to steps four and five. *See* 20 C.F.R. § 404.1520(a). The ALJ determined Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 675.

Step four requires the ALJ to consider the claimant's residual functional capacity ("RFC") to determine whether the impairment or impairments prevent the claimant from engaging in "past relevant work." *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f). "Past relevant work" refers to work performed by the claimant within the last fifteen years or fifteen years prior to the date that

6

disability must be established. *See* 20 C.F.R. § 404.1565(a) and 416.965(a). If the claimant is able to perform any past relevant work, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f).

In the most recent hearing, the ALJ determined that Petitioner, since May 1, 2005, had the RFC to perform light work and simple tasks consistent with entry-level work so long as she was not required to read or write in English or interact with others more than occasionally. Tr. 677 In making this determination, the ALJ considered Petitioner's claims of depression, anxiety, tiredness, headaches, and neck pain. Tr. 678. The ALJ noted Petitioner said she could not read or write in English but chose to testify at her hearings in English despite the ALJ offering the services of a translator. Tr. 678. The ALJ further noted Petitioner's earlier reports that she could care for her day-to-day needs without difficulty and could cook, wash dishes, dust, do the laundry, drive a car, transport her children to and from school, shop for groceries, and go to the bank. Tr. 678. Considering the whole record, the ALJ determined that Petitioner's impairments could cause some but not all of her alleged symptoms and Petitioner's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully supported by the evidence as a whole. Tr. 679.

The ALJ noted Petitioner had various nonspecific health issues from 2007 until July 2011 when her depression worsened. Tr. 679-80. At that time, Twila Preston, Ph.D. ("Dr. Preston"), performed a psychological consultative examination of Petitioner in November of 2011. Tr. 470, 680. During that examination, Petitioner reported sleeping too much, becoming stressed when her child got in legal trouble, disliking reports of her children's poor behavior at school, and feeling badly when she did not do housework. Tr. 471, 680. Dr. Preston diagnosed Petitioner with major depressive disorder; estimated her Global Assessment of Functional Scale ("GAF") score at 45;

7

opined that Petitioner could not sustain attention and concentration as needed to complete tasks; and thought Petitioner would not relate appropriately to co-workers or supervisors. Tr. 471-74, 680-81. Dr. Preston based these findings on Petitioner's emotional lability and distraction from internal stimuli. Tr. 681. However, Dr. Preston twice cautioned that she was "not confident in the results of [her] examination" because Petitioner was guessing in response to Dr. Preston's questions and "had problems with language." Tr. 470-72, 680.

Dr. Preston examined Petitioner three months later in February 2012 with the help of an interpreter. Tr. 538, 680. Dr. Preston still found Petitioner had a major depressive disorder; estimated her GAF score at 45; and thought Petitioner would not relate appropriately to co-workers or supervisors. Tr. 540-41, 681. Contrary to her findings from the first examination, Dr. Preston determined that Petitioner could sustain attention and concentration sufficient to complete simple tasks. Tr. 541, 681. While the ALJ gave more weight to Dr. Preston's second examination due to the clarity provided by interpreter assistance, the ALJ gave only "some weight" to Dr. Preston's opinions because emotional lability and internal stimuli distractions were not noted by any of Petitioner's other treating physicians. Tr. 681. The ALJ pointed out that no other evidence supported Dr. Preston's assertion that Petitioner was unable to relate to others appropriately, and Petitioner never claimed an inability to work or get along with others. Tr. 861.

Despite Petitioner's counsel arguing Dr. Dean's opinion should be given great weight, the ALJ gave "little/less weight" to his "not updated" opinion that Petitioner would miss significant work time and be incapable of sustaining concentration throughout a workday. Tr. 681. The ALJ noted Dr. Dean was a treating source but determined his assessment was inconsistent with the record as a whole. Tr. 681. In support of this finding, the ALJ noted that Dr. Dean only treated Petitioner four times during 2012-13 before forming his opinions; Dr. Dean reported Petitioner's

8

improvement; Petitioner returned to work and did not return to Dr. Dean for further treatment; and Petitioner later declined psychotropic medications. Tr. 681. The ALJ also pointed out that Dr. Dean, in April of 2013, reported Petitioner's ability to perform simple tasks as "fair," rated her other work-related abilities as "poor," and opined she would miss work more than four times a month. Tr. 646-47, 682. Further criticizing Dr. Dean's opinions, the ALJ noted that Dr. Dean did not do the following: treat Petitioner prior to 2011; review Petitioner's prior treatment records; or document findings supporting his opinions in his treatment notes. Tr. 682. Dr. Dean's treatment notes from his first visit with Petitioner in December 2011 referred only to her complaints, depressed mood, and dysthymia but not any anxiety, distraction, memory deficit, or major depression. Tr. 574-75, 682.

On remand, the ALJ pointed out that newly available evidence related to Dr. Dean's treatments of Petitioner in 2012-13 was before her. Tr. 682. The new evidence included more of Dr. Dean's treatment notes that showed three additional appointments with Petitioner throughout 2012 in addition to the single appointment previously documented in the record. Tr. 682. Treatment notes from the first of these appointments showed Petitioner improved under Dr. Dean's care and reported "doing better despite not being on [psychotropic medication]." Tr. 650, 682. Upon starting a new medication, Dr. Dean reported Petitioner was doing better, observed her mood to be "upbeat and positive," noted her dysthymia improved, and described her decision not to work as her decision to spend time at home with her children. Tr. 650-51, 682-83. After not seeing Dr. Dean from June to December 2012, Petitioner complained of back pain and noted she was not as upbeat as she desired. Tr. 652, 683. Petitioner's two subsequent visits to Dr. Dean focused on her physical pain and finances. Tr. 683. The ALJ reasoned that Dr. Dean's opinion was based on these

9

visits but his records from those visits did not correlate with his March 2013 finding that Petitioner was impaired to the point of disability. Tr. 682-83.

The ALJ found that the record then showed Petitioner's improvement through 2016 until her involvement in a February 2016 car accident. Tr. 683. Specifically, the ALJ cited treatment records throughout 2015 and 2016 wherein Petitioner denied any symptoms of depression or anxiety, requested cessation of her psychotropic medication, and described herself as much better. Tr. 683-84. The ALJ noted that Dr. Dean's and Dr. Preston's assessments pertained only to Petitioner's condition through mid-2012 and were contradicted by later evidence. Tr. 684.

The ALJ also afforded "considerable weight" to the assessments of the state agency medical consultants, who reviewed Petitioner's medical records and found less severe symptom manifestation than described by Dr. Dean. Tr. 496, 511, 564, 684.

In concluding her step four analysis, the ALJ determined Petitioner could perform only light work and concluded that the opinions of Drs. Preston and Dean were "outliers when held against the record as a whole." Tr. 684-85. As such, the ALJ determined Petitioner could not perform past relevant work.

At step five, the ALJ must determine whether the claimant is able to do any other work considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the claimant is able to do other work, the claimant is not disabled. The ALJ determined jobs existed in significant numbers in the national economy that Petitioner could have performed prior to March 24, 2013. Tr. 686-87. However, the ALJ determined that after March 24, 2013, no jobs existed in significant numbers in the national economy that Petitioner could have performed as a result of her age category changing. Tr. 686-87.

## D. Additional Relevant Medical History[3]

Petitioner left her prior nursing home job due to physical demands rather than an inability to relate to others and similarly reported an inability to spend time with friends and family due to pain rather than an inability to relate appropriately to those individuals. Tr. 56-57, 242, 683. According to her husband, Petitioner responded "ok" to employers, criticism, and supervision and interacted with people in social activities "very well." Tr. 238, 318. Petitioner attended church once a week and visited others once a month in social settings. Tr. 242. Petitioner maintained good eye contact and was cooperative, responsive, and willing to engage during examinations with other physicians. Tr. 366, 368, 538, 575, 602.

In April 2013, Dr. Dean filled out a "Treating Medical Source Statement" for Petitioner stating she had poor ability to sustain concentration and maintain attention and pace in a work setting; poor ability to maintain attendance, complete a normal work-day and work-week without interruptions from symptoms; poor ability to work and interact with supervisors, co-workers, and the public; poor ability to accept and adjust to changes; and poor ability to use judgment. Tr. 646. He also checked a box indicating that Petitioner would likely be absent from work more than four times a month. Tr. 647. However, he rated Petitioner's ability to perform simple tasks on a sustained basis as "fair." Tr. 646.

---

[3] As noted above, the Court's General Order No. 2015-05 (Filing 3) requires the plaintiff to file a brief containing a statement of material facts. If the Commissioner thinks the plaintiff's statement is incomplete, his brief should include a non-repetitive counter-statement. Here, Petitioner initially complied by filing a brief containing a scant statement of facts but went on to cite additional facts, not contained in her statement of facts, throughout her brief. The Commissioner also initially complied by agreeing with Petitioner's statement of facts but later referenced additional facts throughout his brief. This subsection contains a synthesis of such facts the parties deemed material enough to cite in their briefs but not so material as to include them in their respective statements of fact.

## II. DISCUSSION

### A. Standard of Review

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The Court must consider evidence that both supports and detracts from the ALJ's decision and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). "If, after reviewing the record, the [C]ourt finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the [C]ourt must affirm the ALJ's decision." *Id.* (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)). The Court should not reverse merely because the Court would have decided differently. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). The Eighth Circuit has held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

Additionally, the Court must determine whether the Commissioner's decision "is based on legal error." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (quoting *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (internal citations omitted) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Nettles v. Schweiker*, 714 F.2d 833, 836 (8th Cir. 1983)). No deference is owed to the Commissioner's legal conclusions. *Brueggemann*, 348 F.3d at 692 (stating that allegations of legal error are reviewed de novo).

## B. ANALYSIS

Petitioner raises two interrelated arguments. First, she argues the ALJ erred and even flagrantly disobeyed the Honorable Judge Strand's remand order accepting Judge Williams's recommendation without modification by not giving controlling weight to the opinion of Dr. Dean. Filing 16 at 9. Second, she argues the ALJ's RFC determination is not supported by substantial evidence partially because Dr. Dean's opinion should control. Filing 16 at 13. As discussed below, the Court affirms the ALJ's determinations.

*1. Compliance with the Order and Proper Weight*

Judge Williams's order, as accepted by Judge Strand, remanded the case for "further proceedings." Tr. 821. The Court specifically directed the ALJ upon conducting "further proceedings" to consider "additional treatment records by Dr. Dean from 2012 and 2015 which the ALJ did not have available to him at the time of his decision." Tr. 821. The Court said:

> Finally, [Petitioner] recovered some additional treatment records by Dr. Dean from 2012 and 2015 which the ALJ did not have available to him at the time of his decision. On remand, the ALJ should consider these additional records as well.

Tr. 821 (citations omitted).

Although Judge Williams directed the ALJ to consider "additional records[,]" Judge Williams also specifically directed the ALJ to enter judgment "against the Commissioner and in favor of [Petitioner]. Tr. 821. Judge Strand wholly adopted these conclusions. Tr. 809.

The question for this Court is whether Judge Williams's order, as adopted by Judge Strand, directed a determination that Dr. Dean's opinion should be given controlling weight with an award of benefits to Petitioner without regard to the consideration of the "additional treatment records by Dr. Dean from 2012 and 2015."

This Court concludes that by remanding to the ALJ and directing certain "additional treatment records" to be considered, Judge Williams and Judge Strand ordered that the ALJ should

"consider these additional records" on remand, even if the result of doing so was further evaluation of whether Dr. Dean's opinion should control and thus potentially resulting in a denial of benefits. If Judges Williams and Strand wished to simply direct a favorable result for Petitioner with no conditions, they could have directed benefits without remand or not ordered the ALJ to consider the additional treatment records from Dr. Dean from 2012 and 2015.

On remand, the ALJ complied with the Order to consider Dr. Dean's newly available additional evidence. *See Tr.* 682-83. The newly available treatment notes showed that Petitioner improved under Dr. Dean's care and reported "doing better despite not being on [psychotropic medication]." Tr. 650, 682. Upon starting a new medication, Dr. Dean reported Petitioner was doing better, observed her mood to be "upbeat and positive," noted her dysthymia improved, and described her decision not to work as her choice to spend time at home with her children. Tr. 650-51, 682-83. After a six-month gap from June to December between Petitioner's visits to Dr. Dean, Petitioner complained of back pain and noted she was not as upbeat as she desired. Tr. 652, 683. Petitioner's two subsequent visits to Dr. Dean focused on her physical pain and finances. Tr. 683.[4] These visits comprised Dr. Dean's contact with Petitioner prior to his April 2013 assessment.

The ALJ considered this additional evidence based on the Judges' direct command in the remand Order, and the evidence did not support Dr. Dean's opinion but instead undermined it. Judge Williams's recommendation to reverse and remand for an ALJ to give Dr. Dean's opinion controlling weight was based on the record generally supporting his opinion. *See* Tr. 818. However, substantial additional evidence in the record, namely Dr. Dean's own newly available treatment notes, contradicts his opinion. Given the now-apparent inconsistency of considering this

---

[4] Petitioner correctly argues that new evidence must relate to the period on or before the date of the hearing decision. *See* 20 C.F.R. §§ 404-970(a)(5)–(6). However, Petitioner's argument is misplaced as it relates to this evidence because these additional treatment notes refer to appointments and evaluations occurring in 2012 before Dr. Dean's March 2013 opinion.

14

additional evidence while also giving Dr. Dean's opinion controlling weight, the Court determines that the ALJ did not defy the Court or disobey its Order because the Court directed the ALJ to consider additional evidence before giving Dr. Dean's opinion controlling weight. As a result of the newly available evidence supporting a conclusion different than the one reached by Judge Williams, the ALJ did not err by giving Dr. Dean's opinion less than controlling weight.

Further, the record contains substantial evidence supporting the ALJ's weight determination for Dr. Dean's opinion in light of this new evidence. In evaluating a treating physician's opinion as to the nature and severity of a claimant's impairments, the ALJ must determine whether that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"; if the opinion is well-supported and consistent with the other substantial evidence, the ALJ must give it "controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016). The record must be evaluated as a whole to determine whether the treating physician's opinion should control. *Tilley v. Astrue*, 580 F.3d 675, 679-80 (8th Cir. 2009); *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's opinion is entitled to no greater weight than another physician's when it "consists of nothing more than vague, conclusory statements." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)). Further, "it is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Perkins v. Astrue*, 648 F.3d 892, 899 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009)). "A treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006))

Here, Dr. Dean's opinions are inconsistent with substantial evidence in the record, particularly his own treatment notes as outlined above. *See Perkins* 648 F.3d at 899. Dr. Dean's opinions were also conclusory, consisting of undefined, one-word responses of "poor" or "fair" and checked boxes; he neither elaborated with any explanations nor cited supporting medical evidence. *See* Tr. 646-647; *Wildman,* 596 F.3d at 964 (holding that an ALJ "properly discounted [the treating physician's] opinion" as conclusory because it consisted of checklists, cited no medical evidence, and provided little elaboration). As such, the Court agrees with the ALJ that "[Dr. Dean's] perspective as a treating source is recognized but that fact alone does not outweigh the inconsistency with his assessment when held against the weight of the record." Tr. 681.

2. *Substantial Evidence*

Petitioner generally argues the record lacks substantial evidence supporting the ALJ's RFC determination "that [Petitioner] ha[d] the physical and mental functional ability to perform jobs that exist in significant numbers" until reaching the age of fifty. *See* Filing 16 at 13. The Court disagrees and finds substantial evidence on the record as a whole to support the ALJ's RFC determination and findings as to Petitioner's mental and physical ability to perform sustained light work.

The RFC is "what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017) (quoting *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001)). The RFC determination is the responsibility of the ALJ. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). "The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of [her] limitations." *Gann*, 864 F.3d at 951 (alterations in original) (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003)). The claimant bears the

16

burden to establish an RFC that indicates disability. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

"Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2015). While "some medical evidence" must support an ALJ's decision, *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010), an ALJ need not tether the work capacity assessment to any particular medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Instead, the ALJ may rely upon a constellation of opinions, *see Julin*, 826 F.3d at 1088, or even the medical records themselves. *See Hensley*, 829 F.3d at 932.

Here, the ALJ properly considered Dr. Dean's opinions, Dr. Preston's opinions, the opinions of the reviewing physicians, Petitioner's testimony, and the entirety of the record, including Petitioner's medical records. *See generally* Tr. 679-84. The ALJ largely based his RFC findings on the medical records themselves and the opinions of the two reviewing physicians. Tr. 677-84. (extensively citing Petitioner's treatment records and noting the "considerable weight given the opinions of the reviewing physicians). This is in accordance with Eighth Circuit case law. *See Julin*, 826 F.3d at 1088; *Hensley*, 829 F.3d at 932. Given the ALJ's reliance on Petitioner's *medical* records and the reviewing physicians' *medical* opinions, there is clearly "some medical evidence" supporting his RFC finding. *See Jones*, 619 F.3d at 971; *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (finding an ALJ's reliance on physicians' notes within the claimant's medical records and reviewing physicians' opinions as substantial evidence supporting the ALJ's RFC determination). As such, substantial evidence on the record as a whole supports the ALJ's

RFC determination that Petitioner could engage in sustained light work with social and language limitations.

Further challenging the ALJ's RFC finding, Petitioner argues that (1) the ALJ should have given Dr. Dean's opinion controlling weight; (2) the state agency evaluations were insufficient to support the ALJ's finding; and (3) the ALJ ignored and improperly discounted Dr. Preston's opinions.

First, as discussed above, substantial evidence on the record as a whole supports the ALJ's decision to discount Dr. Dean's opinions.

Second, the ALJ did not rely solely on the state agency evaluations but also based her RFC determination on Petitioner's medical records. In *Stormo*, 377 F.3d at 807, the claimant raised a similar argument alleging the ALJ's RFC determination lacked support because the ALJ relied on his own opinion rather than discredited medical opinions. The *Stormo* court held that substantial evidence supported the ALJ's RFC determination because the ALJ relied on physicians' notes within the claimant's medical records and reviewing physicians' opinions. *Id.* at 807-08. Here, the ALJ acted similarly, and the Court finds substantial evidence on the record to support the ALJ's RFC determination.

Third and finally, substantial evidence supports the ALJ's decision to discount Dr. Preston's opinions. Dr. Preston herself twice cautioned against confidence in the results of her first consultative examination of Petitioner in November of 2011 because of a language barrier. Tr. 470-72. Dr. Preston opined that Petitioner could not sustain attention and concentration as needed to complete tasks and thought Petitioner would not relate appropriately to co-workers or supervisors because of Petitioner's emotional lability and distraction from internal stimuli. Tr. 471-74. Three months later, Dr. Preston re-conducted her examination with the aid of an interpreter

and found that Petitioner could sustain attention and concentration sufficient to complete simple tasks but still would not relate appropriately to co-workers or supervisors. Tr. 538, 540-41.

The ALJ gave only "some weight" to Dr. Preston's opinion regarding inability to relate to others based on substantial evidence. Emotional lability and internal stimuli distractions were not noted by any of Petitioner's other treating physicians. Tr. 681. Further, Petitioner:

- left her nursing home job due to physical demands rather than an inability to relate to others (Tr. 56-57, 683);

- responded to employers, criticism, and supervision "ok" and interacted with people in social activities "very well" according to her husband (Tr. 238, 318);

- went to church once a week and visited others once a month in social settings without any reported issue (Tr. 242);

- reported an inability to spend time with friends and family due to pain rather than an inability to relate appropriately (Tr. 242);

- maintained good eye contact and was cooperative, responsive, and willing to engage during examinations with other physicians (Tr. 366, 368, 538, 575, 602).

Because substantial evidence on the record as a whole supports the ALJ's decision to afford Dr. Preston's opinion only "some weight" is proper.

In conclusion, the ALJ properly considered the various medical opinions in the record and Petitioner's medical records; accordingly, the ALJ's findings, based largely the medical records themselves and the opinions of the two reviewing physicians, are supported by substantial medical evidence within the record as a whole.

### III. CONCLUSION

The Court finds the Commissioner's final decision denying Petitioner's claim for benefits under the Act should be affirmed.

**IT IS ORDERED:**

1. The Commissioner's motion to affirm the Commissioner's final decision ([Filing 17](Filing 17)) is granted;

2. Petitioner's motion for reversal of the Commissioner's final decision ([Filing 15](Filing 15)) is denied;

3. The Commissioner's final decision is affirmed;

4. A separate judgment will be entered.

Dated this 21st day of November, 2019.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge